IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| DUANE and | ) | |
| DONNA KERNS, individually and as | ) | |
| the next of kin of and natural parents | ) | |
| of Colton Kerns, a deceased minor, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 13-CV-290-TCK-PJC |
| | ) | |
| INDEPENDENT SCHOOL DISTRICT | ) | |
| NO. 31 OF OTTAWA COUNTY,[1] | ) | |
| MARK ALEXANDER, individually | ) | |
| and in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is Defendants' partial motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") (Doc. 12).

I.    **Factual Allegations**

This suit was brought in state court by Plaintiffs Duane and Donna Kerns ("Parents"), individually and as the next of kin and natural parents of their deceased son, Colton Kerns ("Colton"), and was subsequently removed. Parents allege that, on April 20, 2012, Colton, an eleventh grader at Fairland Public Schools, was on school grounds with many other students preparing for the senior prom. During this time, Colton was consuming alcohol on school grounds. The supervising teachers became aware that Colton was intoxicated, and one teacher contacted the Superintendent of Fairland Public Schools, Defendant Mark Alexander ("Alexander"). Around 12:30 p.m., Alexander came to

---

[1] Parents originally sued "Fairland School Board." On July 1, 2013, the Court granted Plaintiffs' motion to substitute this defendant with the properly named defendant, Independent School District No. 31 of Ottawa County ("School District").

the school and confronted Colton.  After Colton affirmed to Alexander that he had been drinking, Alexander prohibited Colton from attending prom and suspended him for the remainder of the school year.  Colton was "extremely upset and still intoxicated."  (Compl. ¶ 24.)  Alexander then directed two other students to take Colton home in Colton's vehicle.  Parents allege that Alexander did not call Parents to determine if they were available to pick up Colton, did not call law enforcement, did not inquire as to whether the students assigned to take Colton home had also been drinking, and did not notify Parents once the decision was made to send Colton home in his vehicle with other students.[2]

After leaving the school, the student driving Colton's vehicle made a stop and exited the vehicle.  Colton got into the drivers' seat and refused to move.  Colton drove the other students to their homes and then continued driving.  While driving, he called and/or texted several people "expressing his anger and frustration and threaten[ing] to outrun the police."  (*Id.* ¶ 32.)  A short time later, Colton died in a one-vehicle car accident.  According to the Complaint, the wreck was caused "in whole or in part" by Colton's "intoxicated and emotional state."  (*Id.* ¶ 34.)

Parents sued the School District and Alexander in his official and individual capacities, asserting two claims: (1) violation of Colton's substantive due process right under the Fourteenth Amendment to be free of state-created danger, in violation of 42 U.S.C. § 1983 ("§ 1983 claim");[3] and (2) negligence.  Defendants moved to dismiss all § 1983 claims against the School District and

---

[2]  Parents allege that one of these students had indeed been drinking.

[3]  Parents did not respond to Defendants' motion to dismiss any potential § 1983 claims based upon equal protection or procedural due process violations.  (*See* Mot. to Dismiss at Proposition II, at 5-6.)  This aspect of Defendants' motion is conceded, and Parents' claim is limited to the "danger creation" theory discussed in Parents' response brief.

Alexander based on the lack of any alleged violation of Colton's constitutional rights. Alternatively, Defendants moved to dismiss the § 1983 claim against the School District and the "official capacity" claim against Alexander based on the absence of allegations supporting municipal liability. Alternatively, Defendants moved to dismiss the § 1983 claim against Alexander in his individual capacity based on qualified immunity. Finally, Defendants moved to dismiss any claim for punitive damages against the School District or Alexander in his official capacity. Defendants did not move to dismiss the negligence claim.

## II. Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Id.* at 1177 (quoting *Twombly,* 550 U.S. at 547). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Id.*

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it

innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted).  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Id.*  "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them."  *Id.* at 1248.  In addition, the Tenth Circuit has stated that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."  *Id.*

### III.    Constitutional Violation[4]

Generally, the Due Process Clause of the Fourteenth Amendment does not impose an obligation on the state to protect individuals from the actions of third parties.  *See Christiansen v. City of Tulsa*, 332 F.3d 1270, 1279 (10th Cir. 2003) (explaining that state actors are liable only for their own acts and not the actions of third parties).  One exception to this rule, which is urged by Parents in this case, applies when state officials create or increase the danger that ultimately caused harm to the plaintiff.  *See id.* at 1281 (labeling these types of claims as "danger-creation claims").  Danger-creation claims "ultimately rest on the specifics of a substantive due process claim – i.e. a claim predicated on reckless or intentional injury-causing state action which 'shocks the conscience.'"  *Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1262 (10th Cir. 1998).  Liability is imposed based upon the state actors' "culpable knowledge and conduct in affirmatively placing

---

[4] If there is no constitutional violation alleged, there is no need to address Defendants' remaining arguments.  Thus, this argument will be addressed first.  This section constitutes the Court's analysis of the first prong of the qualified immunity analysis, which is discussed *infra* Part V.

an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid." *Id.* at 1263. Thus, the "environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's [acts] to occur." *Id.*

> The Tenth Circuit has articulated a six-part test governing danger-creation claims:
>
> (1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking.

*Christiansen*, 332 F.3d at 1281 (internal quotations omitted). In their motion to dismiss, Defendants argue that Parents' allegations, accepted as true, cannot satisfy the first or sixth elements of this test.

## A.    First Element - Created or Increased Vulnerability to the Danger

Defendants argue that Plaintiffs have failed to allege any affirmative actions by Alexander that satisfy this element. Specifically, Defendants contend that (1) the danger already existed because Colton was already intoxicated, and (2) "[b]y directing two students (one of which the Plaintiffs do not contend was drinking) to drive [Colton] home, [Alexander] put [Colton] in no more danger than that which he already faced when he drove home on his own." (Mot. to Dismiss 9.)

Parents' allegations are sufficient to survive a motion to dismiss as to this element. At the time of the state action, Colton had created the danger flowing from intoxication. However, Colton had not left school grounds or attempted to leave in his vehicle. Instead, he remained on school grounds under adult supervision when school officials discovered he was intoxicated. At this juncture, Alexander intervened in the situation by suspending him from school, prohibiting him from

5

attending prom, and directing two other students to drive him home in his vehicle.  Alexander allegedly made affirmative decisions and took affirmative actions that impacted the situation in a manner that at least potentially increased the danger Colton faced, and this states a plausible claim of "danger creation" under Tenth Circuit law. *See Armijo*, 159 F.3d at 1264 (addressing summary judgment evidence and finding triable questions of fact as to § 1983 danger-creation claim after student committed suicide in his home) (finding that principal and counselor's actions potentially "increased the risk of harm" to student where they (1) suspended a special education student, (2) knew he was very angry, (3) knew he had access to firearms in his home, (4) knew he had made suicidal comments, (5) decided to drive him and leave him alone in house, and (6) failed to notify his parents); *id.* at 1263 n.7 (collecting cases and comparing factual circumstances in which state was found to have created or increased danger with cases in which state merely maintained the status quo or failed to promptly rescue); *Thayer v. Wash Cnty. Sch. Dist.*, 858 F. Supp. 2d 1269, 1278 (D. Utah 2012) (denying summary judgment) (finding triable questions of fact as to whether school security officer increased the danger to a student who used a gun loaded with blanks to commit suicide on school grounds, where security officer (1) permitted the gun loaded with blanks to be on school grounds for a school play, and (2) failed to ensure rules he established for the gun were being followed); *cf. Rogers v. City of Port Huron*, 833 F. Supp. 1212, 1218-19 (E.D. Mich. 1993) (police officers' act of leaving individual drunk and unconscious on side of road did not create or increase danger than that which previously existed).  Further, Alexander's alleged conduct was on one occasion and directed at one individual, which increases the likelihood of stating a plausible claim. *Cf. Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002) (affirming Rule 12(b)(6) dismissal of "danger-creation" claim brought by parents of child who died in day-care facility because the

6

defendant's alleged conduct of improper licensing and investigating only created an alleged danger of an "indefinite duration" and was not aimed at any particular child).

*Christiansen*, the Tenth Circuit case principally relied upon by Defendants, is not persuasive at the Rule 12(b)(6) stage because it turned on a detailed analysis of summary judgment evidence. *See Christiansen*, 332 F.3d at 1281-82.  In addition, the alleged conduct in this case could, depending on the evidence, be distinguishable from actions attempting to remove a suicidal person from a dangerous situation he himself created.  *See id.* (holding that police officers' actions of quarantining a suicidal man in his apartment and using a "flexible baton" while attempting to rescue him fell short of any deliberate action placing him unreasonably at risk of harm).  Here, the facts and circumstances are relevant to assessing the level of danger Colton created himself, and how and to what extent Alexander's conduct impacted that danger.  Therefore, Defendants are not entitled to dismissal based on Parents' failure to state a claim as to the first element.

### B.    Sixth Element - Shocks the Conscience

The "shocks the conscience" requirement for a danger-creation claim is grounded in three principles: (1) restraint in defining the scope of substantive due process claims; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local bodies in making decisions impacting public safety.  *See Armijo*, 159 F.3d at 1262.  In furtherance of these principles, the Tenth Circuit requires a plaintiff to demonstrate that the state action was not only intentional or reckless but also that it possesses a "degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."  *Id.*  The level of conduct "cannot precisely be defined, but must necessarily evolve over time from judgments as to the constitutionality of specific government conduct."  *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995).

7

Whether specific conduct shocks the conscience is a question of law for the Court.  *See Perez v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan.*, 432 F.3d 1163, 1168 n.4 (10th Cir. 2005) (citing *Terell v. Larson*, 396 F.3d 975, 981 (8th Cir. 2005)); *Uhlrig*, 64 F.3d at 573 (explaining that the standard for judging a substantive due process claim is whether the challenged government action would shock the conscience of federal judges) (citing *Collins v. City of Harker Heights Tex.*, 503 U.S. 115 (1992)); *Mason v. Stock*, 955 F. Supp. 1293, 1308 (D. Kan. 1997) ("The conduct must shock the conscience of federal judges.  In other words, the 'shock the conscience' determination is not a jury question.") (internal citations omitted).

Although it is a question of law, the question often turns on a close examination of evidence, including: (1) the contextual facts, *see Armijo*, 159 F.3d at 1264 (affirming denial of summary judgment as to this element because the summary judgment evidence could "possibly be construed as conscience-shocking, depending on context as determined after a full trial"); (2) the particular environment in which the state action occurs, *see Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998) ("Deliberate indifference that shocks in one environment may not be so patently egregious in another . . . ."); and (3) whether the state actor had time to deliberate or was acting under exigent circumstances, *see Green v. Post*, 574 F.3d 1294, 1303 (10th Cir. 2009) (explaining that, where there is opportunity for reflection and "unhurried judgments," deliberate indifference to an extremely great risk of serious injury can shock the conscience); *Amrine v. Brooks*, 522 F.3d 823, 833-34 (8th Cir. 2008) ("Where state officials have the opportunity to deliberate various alternatives prior to selecting a course of conduct, such action violates due process if it is done recklessly.") (internal quotations omitted); *Ireland v. Jefferson Cnty. Sheriff's Dep't*, 193 F. Supp. 2d 1201, 1221 (D. Colo. 2002) (addressing Rule 12(b)(6) motion to dismiss claims brought by student injured in Columbine

shootings) (dismissing "danger-creation" claims against law enforcement based on absence of conscience-shocking behavior and reasoning, in part, that officers were "faced with a volatile emergency situation the scope and nature of which was unknown and unprecedented").

The Court concludes that a factual record is necessary to meaningfully analyze the above factors and determine whether the alleged conduct was conscience-shocking. While some allegations of conscience-shocking behavior may not warrant discovery or any further evidentiary presentation, Parents' allegations in this case state a plausible claim under Tenth Circuit precedent governing "danger creation" claims against school officials. *See Armijo*, 159 F.3d at 1264 (addressing summary judgment evidence) (principal and counselor's conduct of suspending special education student from school, causing him to become angry, driving him home, leaving him alone with access to firearms, and failing to notify his parents "could be construed as conscience-shocking").[5] The Court observes, however, that federal law imposes an extremely high standard, and that the record evidence must be particularly egregious in order to shock the conscience of this Court.

## IV.    Municipal Liability[6]

Assuming Parents have alleged a constitutional violation committed by Alexander, Defendants alternatively argue that the School District cannot be held liable for any such violation.

---

[5] *Armijo* has been questioned by at least one circuit. *See Hasenfus v. LaJeunesse*, 175 F.3d 68, 74 (1st Cir. 1999) (expressing doubt as to whether school officials' conduct could be deemed conscience-shocking rather than seriously negligent and stating that "[i]f sound, the Tenth Circuit decision is at the outer limit" of what may be deemed conscience-shocking).

[6] Part IV also applies to the claim against Alexander in his official capacity, as such claim is construed as one against the School District and has the same requirements. *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (explaining that § 1983 claims against two officers in their official capacities were actually against the municipality and requiring the plaintiffs to establish municipal liability as to such claims).

Defendants contend that Parents have failed to allege that Alexander (1) acted pursuant to an official policy or custom of the School District; or (2) acted as an official with final policymaking authority as to the decision in question. *See Murrell v. Sch. Dist. No. 1 Denver, Colo.*, 186 F.3d 1238, 1249 (10th Cir. 1999) (explaining two methods of establishing municipal liability for a municipal official's actions). Inexplicably, Parents did not allege any basis for municipal liability, as is routinely done in these cases, did not respond to this argument in any meaningful way, and did not request leave to amend. Instead, Parents mistakenly argued that there is no municipal liability requirement for a "danger creation" theory of § 1983 liability and that Defendants' cited cases on municipal liability are somehow limited to their specific factual scenarios.[7] In the event the Court was inclined to *sua sponte* permit amendment, Defendants argued in a footnote that amendment would be futile because (1) Alexander was not acting pursuant to any official policy or custom, and (2) the school board members, and not Alexander, are the final policymakers for the School District.

The Court has conducted its own research to determine if amendment would be futile. The Tenth Circuit has explained that "if an official, who possesses final policymaking authority in a certain area, makes a decision – even if it is specific to a particular situation – that decision constitutes municipal policy for § 1983 purposes." *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995); *Ireland*, 193 F. Supp. 2d at 1226 ("A single act of an employee may be imposed on a local governmental entity if the employee possesses final authority to establish policy with respect to the challenged action."). In order to determine if an official is a final policymaker, the Court considers three factors: "(1) whether the official is meaningfully constrained by policies not of that official's

_____

[7] This argument reflects a misunderstanding of basic principles of § 1983 law, as municipal liability must be established regardless of the type of alleged constitutional violation.

10

own making; (2) whether the official's decision are final – i.e., are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Id.* (internal quotations omitted).  In considering these factors, the Court applies state law and examines the "legal chain of authority." *Id.* at 448-49.

Defendants contend that amendment is futile in this case because, under Oklahoma law as interpreted in *Curtis v. Oklahoma City Public School Board of Education*, 147 F.3d 1200 (10th Cir. 1998), local school board members are always the final policymakers for an Oklahoma school district, regardless of the type of decision in question.  However, the Tenth Circuit has not interpreted *Curtis* in this manner and has held that a superintendent may be a final policymaker with respect to certain decisions.  *See J.M. ex rel. Morris v. Hilldale Indep. Sch. Dist. No. 1-29*, 397 F. App'x 445, 456-57, 2010 WL 3516730, at *11 (10th Cir. Sept. 10, 2010) (unpublished) (rejecting a school district's argument that only school board members may be deemed final policymakers for an Oklahoma school district).  The court explained that "*Curtis* was a wrongful discharge case in which this Court noted in passing that a school board was the final policy-making authority under state law" and that the "*Curtis* opinion does not discuss the final policy-making authority of a school superintendent who is authorized under the written school policy to implement the sexual harassment policy." *Id.*  Therefore, the Tenth Circuit has indicated that superintendents may be final policymakers for certain purposes, and amendment to allege that Alexander was a final policymaker as to the decision in question would not be futile.

The question then becomes how generous the Court will be with its *sua sponte* power in the absence of any argument or request for amendment by Parents.  Based on the circumstances presented

– namely, the potential loss of a constitutional claim against the municipal entity – the Court concludes that amendment is in the interest of justice.  *See* Fed. R. Civ. P. 15(a)(2).[8]

## V.     Qualified Immunity

Defendants have raised the defense of qualified immunity with respect to claims against Alexander in his individual capacity.  Qualified immunity can shield Alexander from liability for civil damages if his conduct "d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Stewart v. Beach*, 701 F.3d 1322, 1329 (10th Cir. 2012). The Court must consider whether the alleged facts (1) make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of Alexander's alleged misconduct.  *See id.* at 1329-30.  The Court has already held that the alleged facts could make out a violation of Colton's substantive due process rights, *see supra* Part III,[9] and the remaining question is whether the right at issue was clearly established at the time of Alexander's decision.

In order for a right to be clearly established, there ordinarily must "be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Cordova v. Aragon*, 569 F.3d 1183, 1192 (10th Cir. 2009).  "When a clearly established right depends on the application of a general principle of law to a particular set of facts, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Id.* (internal citations omitted).  "The key to the analysis is notice – an official somehow must be on notice that the conduct in question could violate

---

[8] Parents' counsel are warned that the Court will not do their research or craft their arguments for them in later stages of these proceedings.

[9] The Court's analysis *supra* Part III constitutes the Court's analysis of the first prong of the qualified immunity analysis.

the plaintiff's constitutional rights." *DeSpain v. Uphoff*, 264 F.3d 965, 979 (10th Cir. 2001). "The facts of previous decisions need not correlate exactly with those of the case at issue, as long as there is some factual correspondence between the two." *Id.* (internal quotation omitted). In defining the relevant "right" at issue, courts must avoid using "too high a level of generality" and must undertake the inquiry "in the specific context of the case." *Douglas v. Dobbs*, 419 F.3d 1097, 1101 (10th Cir. 2005).

The Court concludes that a reasonable Oklahoma school official had notice that the alleged conduct – namely, sending an angry, intoxicated student home as a passenger in his vehicle with other students, without calling the intoxicated student's parents or otherwise attempting to prevent dangers associated with drunk driving – could potentially violate the student's constitutional right to be free of decisions by school officials that create danger or increase the student's vulnerability to danger. While not factually identical, the *Armijo* decision is sufficiently similar to provide this notice. As explained above, in *Armijo*, the school officials suspended a special education student, knew that he was angry, knew that he had access to firearms in his home, knew that he had made suicidal comments, failed to contact his parents, drove him home, and knew he would be alone in house, thereby increasing the risk that the student would commit suicide using a firearm in the home. *See Armijo*, 159 F.3d at 1264; *see also supra* Part III. School officials could not have predicted that the student would commit suicide once they released him from their custody, just as Alexander could not have predicted that Colton would end up driving his vehicle and having an accident. Nonetheless, the school officials' potential liability stemmed from their knowledge of a dangerous situation to which they deliberately subjected that particular student. The alleged facts are close enough to

*Armijo* to survive a Rule 12(b)(6) motion as to whether Alexander was on notice that his conduct could violate a constitutional right.[10]

## VI.    Punitive Damages

Defendants seek dismissal of any claim for punitive damages against the School District or Alexander in his official capacity.

### 1.       § 1983 Claim - School District

Parents may not recover punitive damages on their § 1983 claim asserted directly against the School District, as municipal agencies are immune from punitive damages under § 1983.  *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1307 (10th Cir. 2003) (explaining that § 1983 bars punitive damage awards against municipal agencies, including school districts).

### 2.       § 1983 Claim - Alexander/Official Capacity

The availability of punitive damages on Parents' § 1983 claim asserted against Alexander in his official capacity is less clear.  In *Youren*, the court stated that "[t]he fact that municipalities are immune from punitive damages does not, however, mean that individual officials sued in their official capacity are likewise immune."  *Id.* at 1296 (holding that whistleblower employee's evidence in support of her official capacity § 1983 claim against school official – which included her "shin[ing] a light on unsavory and illegal practices" and then being ordered to undergo a psychological evaluation and threatened with termination – warranted a punitive damages instruction).  However, this holding in *Youren* has been called into question by lower courts.  *See Trevillion v. Glanz*, No. 12-CV-146-JHP, 2012 WL 4893220, at *6 (N.D. Okla. Oct. 15, 2012) ("Although this language

---

[10]  The Court finds that neither *Christiansen* nor other "law enforcement" cases cited by Defendants create a sufficient degree of ambiguity in Tenth Circuit law.  *Armijo* involves a school official, presents similar facts to those alleged here, and is controlling for purposes of the Court's "clearly established right" analysis.

indicates some punitive award may be available in official capacity suits, it cites to no authority and runs counter to long-established Supreme Court precedent.") (declining to follow *Youren* and dismissing punitive damage claim against sheriff sued in his official capacity under § 1983); *Riggs v. City of Owensville*, No. 10-CV-793, 2010 WL 2681384, at *2-3 (E.D. Mo. July 2, 2010) ("[*Youren*] is not supported by reasoning or citation to authority and does not appear to have been followed even within the Tenth Circuit."). The Court will address this question at later stages of the proceedings, if necessary and after full briefing by the parties. Defendants' motion to dismiss any punitive damage claim arising from Alexander's official conduct is denied.[11]

**VII. Conclusion**

Defendants' Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 12) is DENIED in part and GRANTED in part. It is granted as to claims for punitive damages against the School District but denied as to all other claims.[12]

Parents are granted leave to file a First Amended Complaint alleging that Alexander was a final policymaker for purposes of the decision in question, such that the School District is subject to municipal liability. The Amended Complaint shall be filed no later than three days from the Court's entry of this Order.

---

[11] The Court recently employed this same analysis and procedure in a case against Tulsa Public Schools and a Tulsa Public Schools official. *See Murphy v. Spring*, No. 13-CV-96-TCK, 2013 WL 5172951, at *5-6 (N.D. Okla. Sept. 12, 2013).

[12] Parents have conceded their § 1983 claim is limited to the danger-creation theory discussed in this Opinion and Order.

15

A schedule will be entered in accordance with the deadlines requested in the parties' Joint Status Report.  (*See* Doc. 19 (requesting that deadlines be set after Court ruled on motion to dismiss).)

SO ORDERED this 31st day of October, 2013.


**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**